82-14 60th Road
Middle Village, New York 11379
February 24, 2022
(718) 898-7077
alangiordani@gmail.com

CLERK OF U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
225 Cadman Plaza East
Brooklyn, N.Y. 11201
Attn: Hon Judge Ann M. Donnelly

Re: Giordani v U.S. Department of Justice et. al 22-CV-642(AMD)(LB), Status and application to reinstate matter completely.

Dear Honorable Judge Donnelly,

Pursuant to your memorandum decision and order dated February 14, 2022 directing a status report to be filed by March 1, 2022, service of process has now been completed on all named and captioned parties, except upon my brother and captioned defendant Paul Giordani. Enclosed, please find an affidavit of service on the Law Office of John T. Landers and Secretary of State service upon Horwin Realty (see attached affidavits of service). Also see the attached affidavit of an unsuccessful attempt to serve Paul Giordani on Bronco Road in Boulder City, Nevada dated February 9, 2022. Plaintiff has directed a continued attempt of service of process on Paul, but has not to, date been advised that jurisdiction upon him has been completed. Plaintiff has also communicated with Paul's New York Legal Counsel, and representative Angelo Grasso, Esq., and has requested that this law firm accept legal service on Paul's behalf, but Mr. Grasso has refused. In as much as Paul maintains a legal proceeding in the Surrogate Court of Kings County New York, he clearly avails himself to the benefits of this jurisdiction. Plaintiff would welcome any direction or instruction from this Court with respect to procurement of this jurisdiction.

Additionally, the plaintiff believes that the licensed N.Y.S. attorneys d/b/a and under the trade name Law Offices of John T. Landers, appear to include Anne Landers, Esq., who was the daughter and law partner of John T. Landers, Esq., and Thomas P.L. Mahoney Esq. who appears associated with Landers, and who practices law at the 62-87 Woodhaven Boulevard Rego Park, New York. Mr. Mahoney appears to be one of the witnesses in the subject 2002 instrument, and holds himself out to the public as an Estate planning expert and elder care law practitioner. The Law Office where service on February 7, 2022 contains frontal signage, indicating that the Law Offices of John T. Landers is not defunct, nor has it seized to do

1

business. Plaintiff has reason to believe Ann Landers, Thomas Mahoney and John T. Landers may have been part of the same family unit.

The attached documents are indicative that this Law Office maintained the 2002 instrument with a proprietary intent, that included determinations that kept and maintained the matter before the Surrogate's Court, as part of a continued effort to secure N.Y.S. S.C.P.A. commissions and fees. In as much as Thomas Mahoney, Esq., and Anne Landers, Esq., who maintains a Real Estate Brokerage business, through this location, both appear to have sought financial gain, through impeding the 1997 purchase option, that includes their participation in the drafting and maintaining of the 2002 subject instrument, which was at all relevant times at the legal detriment of plaintiff's vulnerable elderly mother. Plaintiff asserts that both Anne Landers and Thomas Mahoney, together with Paul, and the late John T. Landers are jointly and severally liable in the underlying fraud, and are viable as defendants in this matter. Plaintiff wishes to name captioned John Does 1 and 2, as Thomas Mahoney and Anne Landers. Plaintiff will await further direction from the Court, to determine whether the Court requires additional individual services on them, in this re-designated capacity Plaintiff mails this status letter and application and conforming copy, is furtherance of these efforts to place these parties on notice of this proceeding, and further give them an opportunity to appear and defend.

Initially, I wish to thank you for the opportunity to continue to elucidate upon the matters within, and respectfully point out that the District Court's memorandum decision on page 4, line 5 contains an initial critical error, that misconstrues the nature of the underlying record to the extent that "the plaintiff has already litigated about the Queens property in a 1997 action in the New York Supreme Court, Queens County, see Giordani v. Horwin Realty Co., Index No. 15667/1997(N.Y. Sup. Ct July 22, 1997)." This statement demonstrates a complete misunderstanding of this issue, including a failure to recognize the significance of the color coded exhibits submitted to this Court on February 4, 2022.

The extent of Judge David Goldstein's review was only with respect to that abandoned lot, immediately south, and adjacent to the easement/alleyway of the decedent's titled premises. The adverse possession claim that was made against the abandoned lot (that portion of the survey map submitted and color coded yellow), was one in which the Judge pronounced "that he did not believe in the legal concept of adverse possession," and thereby refused to conduct any further review. Despite the fact that the abandoned lot lay fallow since Queens County was farmland, neither Judge Goldstein or Judge McMahon ever reviewed **any matter** that pertained to the subject alleyway, (that was color coded red on the survey map), and which evidences a completely distinct, different and separate property entitlement.

The color code red on the survey map demonstrates a completely different history, and incidents of ownership. No such concept exists within Anglo-American jurisprudence that deprives private property ownership rights to those that maintain a formally registered legal

2

title, or transfer of those legal rights, without some formal waiver, whether existing in the form of a purchase or rental agreement, gift etc. At no point in time has Horwin Realty, or its commercial tenants, made any assertion that they have a legal right or claim to this residentially zoned premises, nor does Hon. David Goldstein or Hon. Colleen McMahon's refusal to review the matter result in a conveyance of property rights. That at all relevant times this Estate premises was illegally overrun by an illegal non-enforcement County policy that deprived appropriate legal protections, and which was at all relevant times the arbitrary capricious whim and fiat of the factional backroom politicians that commanded and controlled Queens County, and who exchanged their willful blindness for other illicit consideration.

Absent any showing that these commercial interests have any valid legal right, then this matter should be scheduled for partial summary judgment, for a liquidated amount on a sum certain, that can readily be derived through an affidavit from a real estate expert/economist, based upon the principles set out in *Rose Knick v. Township of Scott*, 862 F.3d 310 U.S. Sup. Ct. No 17-647 (2019). Plaintiff further asserts that further injuries, damages and costs may be assessed through a formal inquest hearing before a magistrate. In as much as Horwin Realty and its tenants derived and were unjustly enriched through the course of its misconduct, plaintiff asserts that they are the most culpable with respect to this issue.

The papers already submitted involves and supports plaintiffs position of a further nexus between the draftsman John Landers, Esq. and Horwin Realty, and its tenants that included Kelly's Pub. The misappropriation of this valuable private property of the Estate, was the causal result of these third party involvements, actions and omissions of duty, all in concert or otherwise under color of authority, which were intended to cheat and defraud the decedent, and her respective heirs, and the plaintiff objects to the premature sua sponte dismissal and reserves all rights.

Evidentially, Judge McMahon obviously failed to understand this as she continued to reuse the phrase initially used by Judge Goldstein that references a "certain parcel." It appears that this District Court is now compounding this same previous error, that respectfully, appears to include the very rushed effort that prejudges the matter, so that it can be readily disposed. "Due Process" requires a fresh, fair and complete review of this issue involving this assertion of two distinct parcels of land, as well as whether the failure to do so is a part of an unconstitutional pattern and practice to deprive rights.

There has never been any evaluation or attempt to rectify this error, nor has there been any lawful adjudication of this matter or a valid exercise of res judicata. Instead, this history has been fraught with a complete continued disregard for the rule of Law, concerning private property ownership and rights. There has appeared from the outset of this matter an attempt to avoid, evade and dodge these questions and issues in what appears to be the same effort to preempt a basic rudimentary review. These factors demonstrate the profound injustice that the

3

decedent, and other 60th Road residents were subjected to, since the unlawful commercial expansion unto privately owned residential premises began in 1997.

**JOHN T. LANDERS LAW OFFICE'S "GRATUITOUS BAILMENT"**

The Court should be mindful, that John T. Landers Law Office physically maintained the proffered 2002 instrument until August 2017, three months after the Testatrix death. In doing so, the Law Office of John T. Landers maintained certain legal duties to the decedent, and thereafter to the Estate and its lawful heirs. This included its legal duty not to misguide, or misdirect Testatrix through providing or omitting detrimental legal advice.

By February 2001, it was abundantly clear that the decedent required legal advice, from a source outside of Parrish politics, and especially not from Landers Office, who by that time appeared to be entangled with the other local merchants and vendors inside the Parrish, including the Horwin Realty commercial tenants. Landers Law Office's real estate ventures in the neighborhood,  included Landers connections to the Elliot Avenue merchants, who were by that point in time  cheating the testatrix of valuable legal rights in the scope of her home ownership, and it's quiet enjoyment. The appearance of a conflict at that time required the removal beyond this pernicious influence.

Three thousand dollars was paid to the Deutsch & Schneider law firm at that time for the drafting of a Trust agreement designed to protect the legal rights and wishes expressed by the Decedent, and her respective legal heirs. Plaintiff asserts that the decedent at that time was cowled and intimidated by Paul, who thereafter steered and pressured the vulnerable Testatrix back into Landers Law Offices, who provided and/or failed to provide sufficient legal advice, failed to recognize that any changed circumstances were the result of coercive pressure and which thereby misguided Testatrix into the execution of the 2002 instrument, and its subsequent concealment until 2017.

 The plaintiff asserts that Landers Law office together with Paul, thwarted the decedent's expressed wishes in furtherance of this conspiracy, by its oppressive acts and omissions that included a failure to recognize the coercion and constraint in which the decedent was placed and had otherwise been subjected.

Paul's involvement, without the knowledge of this son, occurred in furtherance of a scheme that sought to avoid the input of necessary legal advice and information beneficial to the decedent or her Estate. This advanced the fraud that is now unfolding, which seeks to provide financial gain of tens of thousands of dollars under New York State S.C.P.A. statutory scheme, to the fraudsters. The provision of commissions, fees and other additional Real Estate sales costs, was at all relevant time calculated by these underlying efforts that sought to and

4

intended to impede the plaintiff's purchase option designated in the 1997 instrument, as well as the 2001 Trust.

Furthermore, this concealment of the 2002 instrument constrained the decedent from further drafting any more recent or subsequent testamentary instruments, which by 2009 and 2010 required Testatrix comprehension, and the necessity of her receiving sufficient legal advice, and information involving her determinations to "update her will," and otherwise gift the house to her son Alan. The necessary legal New York State formalities, toward executing a "new will," or codicil, required input from an attorney who was otherwise not involved or expectant of financial gain from the transaction required to update her rights.

The evidence in support of this continued application demonstrates the 2002 instrument was stale and rancid, but New York Surrogate Law is without sufficient mandate to now remediate this fraud. By keeping and maintaining jurisdiction of these matters before the N.Y.S. Surrogate, plaintiff is asserting that the New York State Surrogate has now become a vehicle and instrument to this fraud, and thereby presents an obvious exception to the legal rule pertaining to the "Doctrine of the Younger abstention."

Plaintiff was contacted in April 2018 by Ann Landers, Esq., who identified herself as a representative of the "Giordani family"(see attached letter). Quite frankly, at this time it is relevant to determine the scope of her representation, as well as Greenfield, Stein & Senior L.L.P. together with Angelo Grasso, Esq., who further contacted plaintiff later in 2018, and also on February 12, 2022 via e-mail, demanding that Plaintiff waive or dismiss claims against Paul Giordani, as well as those against John T. Lander's Law Office. Mr. Grasso appears to implicate or identify that John T. Landers Law Office is a defunct entity, since 2012, however, these other attorneys have continued operations through this office, that continue to maintain front office signage on Woodhaven Blvd., that continue to date holding itself out to the public as being John T. Landers Law Office. Mr. Grasso now appears to represent both Paul and John T. Landers Law Office and its associates.

This demand, by Mr. Grasso reveals an obvious conflict, and question as, to whether there exists an undisclosed agency, and attempt to obfuscate legal rights and claims that can be otherwise marshalled into the Estate. Appropriate disclosure of these involvements as well as all cover sheets involving respective legal liability policies for Landers Law Offices, is demanded. Aside from the fact that each of the decedent's adult children are domiciled in diverse jurisdictions. These matters present the issue of ancillary jurisdiction, in which Paul's out of State participation in this matter from his domicile in Nevada, involved his use of interstate mail and wire as a component to the fraud, and which entitles each of the Estate beneficiaries to recovery, (including Paul in two separate roles as both beneficiary and perpetrator). These matters implicate jurisdictional amounts in excess of $75,000.00 and this Court erred in failing to recognize the content of federal issue matter.

5

It is my belief that Paul Giordani co-conspired with Lander's Office, with both the draftsman and his daughter Anne Landers, (who he knew since 3rd grade) to cheat, misguide, swindle and defraud our late mother, especially of her legal rights, including in the disposition, and gifting of her worldly goods and possessions, that included her home on 60th Road. Furthermore, the scheme further deprived her of that moral agency, which is evident from her 2009 and 2010 writings, as she appears to contemplate and meditate on "the four last things," that a devout elderly Catholic of her nature would naturally be doing, as her days grew shorter. In these papers already submitted is supporting evidence of the fraud, intimidation, coercive measures and efforts of constraint which by 2009 and 2010 made it impossible for her to formally execute a new will. The scheme was essentially a desecration of her most sacred rights. In as much as the attorneys within Landers Law Office could have withdrawn from this scheme, and since they possessed superior knowledge to Paul, including its New York State duties, owed to the client, then Landers Office truly had the last clear chance to avoid this debacle and legal mess and failed in these legal duties, that included advising Paul that they did not wish to participate. Draftsman John Landers held himself out to the public as attorney for Resurrection Ascension, and in doing so needed to recognize that his acts and omissions, as they involved this particular client was in fact "grave matter."

All of this oppressive misconduct was in violation of legal and civil rights, and which this District Court further errored in its evaluation and misapplication of its Younger-abstention. In *Council of the City of New Orleans* 492 U.S. 350 (1989), the Supreme Court viewed abstention from exercising its District Court jurisdiction in deference to the state review process was error. In as much as the Kings County Surrogate has no capacity to review Civil rights claims involving out of state, or third parties, then it is otherwise incapable of rendering rulings on the federal issues presented. This District Court needs to immediately recognize its error, and remediate its Memorandum decision, as well as scheduling the matter for a default proceeding in the event Landers and Horwin Realty fail to appear or answer within the statutory period allotted.

Plaintiff asserts that the three exceptions to Younger exist and are present:

The proffer of the 2002 instrument in the New York State Surrogates Court is in bad faith, in as much as Paul knows and has reason to know that the executed instrument and there after its concealment were intended to cheat and defraud, and to oppressively maintain the elderly testatrix under his threat, menace and his improper influence. The State Surrogates process is completely inadequate to now rectify this injustice(s), committed by the captioned third party participants. The District Court further incorrectly assumes that the existing probate process can offer the plaintiff anything more than a Pyrrhic victory. While the fraudulent factual circumstances may result in the voiding of the 2002 instrument, it leaves the same distribution scheme in place. The N.Y.S. Law that guides intestacy through an administrative per stirpes scheme, is one and the same with the 2002 instrument, demonstrating that the 2002 instrument served no other purpose than to void the 1997 purchase option. This is further

indicative that the District Court has not yet understood the underlying dynamic ramifications of the matters presented within the February 4, 2022 submission, and the Court should immediately reverse itself.

To the extent the District Court does an analysis of its cited N.Y.S. Surrogate's Case(s) and related cases, Plaintiff will not be able to overcome the problem of the applied presumptions of law that will be afforded the late attorney draftsman, John T. Landers, who is central to this fraudulent scheme. Plaintiff can only expect to examine perfunctory witnesses who will not have any meaningful capacity to shed light as to the reasons why the decedent was steered and misguided away from the 2001 Trust instrument, drafted by Deutsch & Schneider, and which was intended to avoid the payment and expenses of the N.Y.S. S.C.P.A. probate Court, and otherwise constituted a waste of tens of thousands of dollars in anticipated fees, and commissions, as well as interfere in advancing the litigation that had been contemplated against Horwin Realty at that time, and which would have otherwise been required to properly restore the Estate with a clear property title.

Where the Law being enforced is "flagrantly and patently unconstitutional," namely that the illegal variance implemented and maintained by Queens County officials was in furtherance of an illegal scheme, deprived the decedent and thereafter her Estate and its beneficiaries of compensation, and which furthermore demonstrates that, the Surrogate is not capable of rendering any capable third party remedy, then a clear exception to the *Younger*-abstention is presented and thereby applicable. This was the very purpose intended by this undersigned in citing recent U.S. Supreme Court rulings involving *Rose Knick v Town of Scott* 862 F. 3d 310 (2019) and *Cedar Point Nursey v Hassid* 923 F 3d 524 (2021), namely that only the District Court has the authority to make determinations involving these unconstitutional third-party "takings."

The very purpose of this Plaintiff in his incorporation of the underlying record, that included the 2018 S.D.N.Y. submission and its numerous documents as supporting evidence was previously submitted as part of the exhibits in support of plaintiff's position that Testatrix lived the last twenty years of her life in the jurisdiction and under the constraint of the "Gangster Government" (See exhibit 9 from S.D.N.Y. 2018 filing, now attached to these papers, in support of this current application to reinstate). At all times this has been a material part of the underlying fraud, and theft by local political factions, their friends, supporters, operatives and allies, who sought to loot and otherwise defraud Queens County residents, which in this immediate matter included this plaintiff's late mother.

Exhibit 10 of the S.D.N.Y. filing now attached to these papers is a N.Y. Post article May 11, 2004 in support of the plaintiff's assertion of the toxic climate of fear created and maintained in Queens County, at the time and in context with the murder at Kelly's Pub. Plaintiff has understood that the scene was so gruesome that N.Y.P.D. homicide was initially

7

unable to establish whether the victim was stabbed or shot to death. Plaintiff also understands that the blood soaked killer(s) exited the back exit through the subject premises dripping a blood trail. This newspaper photo shows owner, former N.Y.P.D. Pat Kelly (also see attached N.Y. Times Article September 1972, involving his arrest and removal from N.Y.P.D. during the Knapp Commission, that involved his robbing and framing drug addicts), and discussing this more recent matter with N.Y.P.D., homicide. Upon information and belief, Pat Kelly and his son Mike Kelly (also former N.Y.P.D., who was removed from the Department in context to this May 2004 incident, and both were reported as to be the last to see the murder victim alive. N.Y.P.D. Lieutenant Eric Adams together with N.Y.P.D. Sgt. Anthony Miranda were at that time called "dumb and dumber" by then N.Y.P.D. Commissioner Ray Kelly, in their confusion of street rumors and department scuttlebutt in which they mis-attributed the rumor(s) about "Kelly" to the Commissioner, rather than Pat and his son Mike Kelly, who was in 2004 assigned to Brooklyn South.

This climate of fear was further permeated when Mike Kelly's "citizen's arrest" of drug addicts on March 3, 2009 (see attached N.Y. Daily News Dynamic Duo report), that again involved the subject physical back alley space, owned by the decedent. This incident occurred a month preceding the April 2009 "codicil" authored by plaintiffs late mother. This is the same Kelly's Pub that advertised in the 1998 Resurrection Ascension Missal, previously submitted on February 4, 2022 to this District Court. It has been the position of the plaintiff since 1997 that a sufficient padlock or barrier separating the two incompatible properties would have alleviated years of hardship and fear, and that the Estate is due compensation for these years of abuse, non-enforcement and unconstitutional policy involving omissions of duty under color of authority.

Plaintiff was contacted by the N.Y.P.D.'s major case squad in December 2012 and questioned with respect to an incident the night before in the adjacent commercial premises, but advised the detective that the incidents were so many, and that Plaintiff lacked any knowledge with respect to that most recent incident that was being investigated. The incidents continue, to date after Kelly's sale of the pub to new owners, all of which has always been under the jurisdiction of Queens County government, including the State Liquor Authority and N.Y.P.D. It is plaintiff's position that the catered beer party events and other merchant contributions constitutes some part of the political influence peddled, and dark money generated and exchanged, through these adjacent properties, which was and has been to the legal detriment of the decedent, and now to her Estate. These are matters well beyond the Surrogates jurisdiction, and better placed within an inquest proceeding before a District Court magistrate.

8

These government entities were at all relevant times under the command and control of Queens County and its bosses, and was a significant component in Testatrix inability to seek out and otherwise receive sufficient legal advice in formally drafting her 2009 and 2010 "codicils". It is obvious that the decedent was adamant to gift the house to the plaintiff, and resented the onerous pressure placed upon her by Paul. Likewise, it is doubtful that she any longer had the capacity to trust John T. Landers Law Office by 2010, and otherwise believed that Paul would be informed, as to any testamentary changes. Landers sought financial gains and profits from the plan to administer the Estate through the Surrogate's Court jurisdiction, rather than have this undersigned do so through a Trust agreement.

Exhibit 6 from S.D.N.Y., further evidences a government mismanaged by willful blindness (See letter dated July 31, 1998) from Division of Alcoholic Beverage Control New York State Liquor Authority Counsel Office dated July 31, 1998 signed by Thomas McKeon advising that a hearing was scheduled on August 5, 1998 but not mailed until that date, and received thereafter, thereby preventing plaintiff from participating or providing meaningful evidence in the scheduled hearing and demonstrating that the illegal fire exit in the back of Kelly's Pub and beer garden was a zoning and safety violation, and further indicating that the New York State Liquor Authority proceeding was a sham, and in violation of the "Monell" Doctrine together with our Fourteenth Amendment Due Process and Equal Protection rights. The entire supporting file is evident of one intentional fumble after the other motivated to avoid remediation and maintain a continued flow of dark money generated by the store fronts.

Respectfully, the District Court in its discussion page 6 last paragraph misstates that plaintiff seeks to enjoin the February 15, 2022 hearing because he believes the New York Surrogate's Court "erred" in determining that the 2002 will is a valid testamentary instrument. Instead, plaintiff's position is actually that any premature sale of the 60th Road premises prior to adjudication of the issues, would be flagrantly unconstitutional, and irreparably harm the plaintiff, and his rights. On this/that basis sale should be enjoined until after the adjudication of all related issues. "That there can be little question (p 7) that determining the validity of [a will} is integral to the Probate Court's ability to perform it judicial function of overseeing the administration of the Estate." Instead, the issue at bar is that the 2002 instrument was nefariously maintained and concealed in furtherance of the fraud, that deprived the testatrix of her civil rights to obtain better and more sufficient legal counsel to properly advise, amend or formally update her will as indicated by her 2009 and 2010 "codicils." The Probate Court cannot redress the underlying law office failure of Landers, that deprived the decedent her legal rights, or those of her lawful heirs and beneficiaries. Only the District Court can, which includes scheduling the matter for an inquest proceeding, to any extent captioned parties fail to timely appear and defend.

*Sprint Communication v Jacobs* 571 U.S. 69 (2013) cited by this District Court, actually

9

draws a distinction between remedial/coercive actions. Suffice to say that a coercive sale of the premises at this point, prior to a full and complete adjudication, would be in complete non-compliance with the Due Process Clause of the Fourteenth Amendment and frustrate the spirit of the Law, together with that of the decedent who maintained in 2010 that she wanted her Alan to have the house.

On February 15, 2022 Plaintiff filed for a Citation for the issuance of Letters Testamentary as directed by the Kings County Surrogate, and was advised at that time that there is a one month delay. Plaintiff, now sends a conforming copy of these papers to the Surrogate, as a further effort so that it can properly comprehend these matters and treat the 2002 instrument as a nullity, and bi-product of this interstate fraud.

## THE DISTRICT COURT FAILS TO APPRECIATE THE SIGNIFICANCE OF *TRACY V. FRESHWATER*

### 623 F.3d 90, 102 (2d Cir. 2010), and "SOLECITUDE."

Respectfully, from page one of this Court's February 14, 2022 sua sponte dismissal the District Court appears perturbed about the "47-page, single-spaced pro-se filing," as it fails to recognize, that the language of *Tracy*, is that of equivocation rather than a support of a draconian misapplied sanction. The *Tracy* court cites *Godlove, v. Bamberger et . al* 903 F.2d 1145, 1148 (7th Cir. 1990) for the proposition that attorneys appearing pro-se are not entitled to any solicitude, despite the fact that this District Court failed to distinguish these matters.

The February 4, 2022 submission duly cites cognizable claims and federal issue matters, worthy of relief, to the extent that the *Tracy* Court cites as precedent, implicating that the "meandering" of the 53 page *Godlove* pleading, was in some way equivalent to this case. This Court failed to recognize that the pro se attorney in *Godlove,* had bogged down extensive discovery demands through her repeated assertions of attorney work product privilege, and only after ignoring repeated Court threats of sanction, was the final sanction of dismissal applied.

This District Court appears to have exercised a subliminal bias and prejudice in its failure to recognize that these underlying facts presented are quite different. The 47-pages, together with the previously incorporated 2018 S.D.N.Y. filing contain multiple exhibits of attorney work product accumulated over years, and is the opposite of *Godlove*, in that it is sufficient for any opposition to adequately frame a complaint, and/or otherwise mount a robust defense. At this nascent stage of litigation, any ambiguities can readily be remediated, and would naturally be developed during the course of litigation. What the District Court has apparently done is to forever preempt lawsuits brought by pro-se attorneys, through this over eagerness to dispose of this case, and apply a barrier to the fundamental rights of attorneys seeking redress to outrageous government misconduct, under color of authority.

10

It is also fair to say that this District Court has made the very same error(s), in its mis-application or reliance of the prior Courts failures to conduct a good faith review, especially on the key issue as to whether a "certain parcel," or two separate distinct property tracts exist, and which should have otherwise controlled the rest of this entire litigation and outcome.

To the extent that this plaintiff took significant time from practicing law to take care of his sick elderly mother, then this Court also failed to recognize that the plaintiff has not "practiced" for years, and this period demarks a period of time in which radical changes have unfolded in our society including the Court instituting ECF filing, that further compelled the undersigned into this overly narrow pro se space. The Court's failure to appreciate the "particular" underlying facts and circumstances, reveals an abuse of discretion, that the *Tracy* court's review would sustain. To the extent this plaintiff suffered a major health downturn during his hiatus from practice, that required major surgery in the past year, is of little consequence, other than to punctuate the profound injustice that is unfolding and preventing a substantive review on the legal merits.

This Court's existing intake problem, which plaintiff believes includes placing form over legal substance, simultaneously creates a cyber divide that appears to impede courthouse access and justice. It should be further noted that the plaintiff previously hired outside technical support during his last attempt to have the matters within reviewed in 2018. It is relevant that this cyber expert also had difficulty with Pacer as he searched for a special cyber tool to "flatten" the data so that the data could be submitted. Once this expert came up to speed with the technology, it was submitted, and thereafter ignored by (S.D.N.Y.).

Plaintiff is further mindful that during this period of societal transition, plaintiff brought his vehicle to experienced auto mechanics who were likewise baffled by new technology, that related to the on dash-board computer, and which required an inspection delay to search for a technician up to speed. The 2010 *Tracy* Court would have recognized that the issues that involve "solicitude," were to be determined on a "case by case basis," which appears to reflect a flexible evolving standard. This District Court made no such effort to do so, and neither did S.D.N.Y., resulting in the pre-judgment of this matter, as both appear to rely on archaic 1990 precedent of the 7th Circuit *"Godlove"* Court, that was applicable in a very different time and place.

The Tracy Court was further mindful as to the need for "solicitude" in inmate civil rights cases, but the civil rights, needs, within this particular matter, far exceeds that previous articulated need for jailed individuals. These matters within describe a much wider special targeting of the demographic within this electoral district(s), as the marginalization of our fundamental civil rights appears to be dissipated and continually corroded from forces intent on transforming society to the detriment of individual rights, especially in this plaintiff's community. The 60th Road property and its neighborhood, were at all relevant times part of a

battleground political district, in which the deprivation of privileges, immunities and services were intended to and have created a massive Exodus away from New York, of that part of the population that has been deemed and designated for unfavorable mistreatment, that the plaintiff asserts includes himself and his pious late mother, and which could readily be set forth in greater measure through the discovery and disclosure processes that previously existed in American Courts.

This fact is readily demonstrable from the recent Maspeth High School scandal, that involved our locally zoned high school engaging in this very same type of discrimination, that deprived Catholic high school aged children entry, that was based upon a sham lottery. Not one of the 150 students from local Catholic households who applied through the lottery entry process were selected, and the subsequent investigation that removed Principal Khursid Abdul-Mutakabbir, was in context to an entirely different (grade fixing) scandal. By ignoring the civil rights of residents in this neighborhood, and electoral district(s), then this, targeting, purging and cleansing of the demographic, by biased idealogues manipulating these electoral processes, through policies that includes deprivation of privileges, immunities, services and otherwise fair treatment from those government entities, and its state licensed operatives, will continue to be the prevailing trend. These matters reflect and share the same invidious unconstitutional patterns and practices, including the U.S. Department of Justice's complete failure to investigate. Until the genuine rule of law, predicated on the fair enforcement of legal doctrines consistent with the Constitution is restored, then all civil rights and liberties remain under threat. This includes and requires an actual respect for precepts of private property ownership.

Respectfully, I ask this Court to restore this matter completely.

Very truly yours,

Alan Giordani

12

cc:

NEW YORK STATE KINGS COUNTY SURROGATE'S COURT
2 Johnson Street
Brooklyn, New York 11201
Hon. Rosemarie Montalbano
Attn: Mary Kim Esq.
Re: 2020-2293(a)(b) &(c)


PAUL GIORDANI
1442 Bronco Road
Boulder City, Nevada 89005-3104


GREENFIELD, STEIN & SENIOR, LLP
600 Third Avenue, New York 10016
Attn: Angelo Grasso, Esq.


LAW OFFICE OF JOHN T. LANDERS
62-87 Woodhaven Blvd.
Rego Park, New York 11374
Attn: Anne Landers, Esq. and Thomas P.L. Mahoney, Esq.



# Juniper Berry

An All-Volunteer publication of the
Juniper Park Civic Association

Middle Village, New York · Vol. 71 • No. 4 • November/December 2010

# GANGSTER GOVERNMENT

**DIVISION OF ALCOHOLIC BEVERAGE CONTROL**

**NEW YORK STATE LIQUOR AUTHORITY**

**COUNSEL'S OFFICE**

THOMAS G. McKEON
COUNSEL

I I PARK PLACE
NEW YORK, NEW YORK 10007
(212) 417-4147

STEPHEN D. KALINSKY
DEPUTY COUNSEL

July 31, 1998

Alan Giordani, Esq.
82-14 60th Road
Elmhurst, NY 11373

Re: Kelly's Pub a/k/a 82-11 Eliot Avenue

Dear Mr. Giordani:

This is in response to your letter of June 26, 1998, to Governor George E. Pataki, concerning the subject premises. Your correspondence with attachments has been turned over to the State Liquor Authority for investigation and appropriate action.

In September of 1997, the Authority received a complaint concerning the subject license using the rear yard of his premises for consumption of alcoholic beverages with approval. Following an investigation by our Enforcement Bureau, a charge was brought by Notice of Pleading dated December 2, 1997. The licensee entered a not guilty plea to the charge and a hearing is scheduled before an Administrative Law Judge on August 5, 1998.

In June of 1998, the licensee filed an alteration application to extend the licensed premises into the rear yard of the premises. Unfortunately, this application was approved by our Licensing Bureau since they were unaware of the community opposition.

All of the documentation forwarded with your recent letter is being reviewed by our Enforcement Bureau and will be investigated for possible charges.

I will advise you of the progress of our investigation as soon as possible. If you have any questions or wish to discuss this matter in more detail, please do not hesitate to call me.

Very truly yours,

STATE LIQUOR AUTHORITY

Thomas McKeon
Counsel to the Authority

cc: Thomas Healy, Asst. Director - Enforcement, NYC
/dg

G-1407

STATE OF NEW YORK
EXECUTIVE DEPARTMENT
DIVISION OF ALCOHOLIC BEVERAGE CONTROL
125 MAIN STREET
BUFFALO, NY 14203

11373 5327

ALAN GIORDANI ESQ
82-14 60TH ROAD
ELMHURST NY 11373

NEW YORK NY 100 08/05/98 12:15 DSS-A #10

The letter dated July 31, 1998 signed by Thomas McKeon from the New York State
Liquor Authority was not postmarked until August 5, 1998, which was also the
administrative hearing date, and subsequently received after that date. This was
intended to preempt the complainant from attending or participating with
contradicting evidence or testimony, was essentially a secret proceeding without
Due Notice.

. 06/12) Summons in a Civil Action (Page 2)

Action No. 22-CV-642 (AMD)(LB)

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* PAUL GIORDANI was received by me on *(date)* Feb 8, 2022, 1:50 pm.

☐ I personally served the summons on the individual at *(place)* _____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____ , a person of suitable age and discretion who resides there, on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is designated by law to accept service of process on behalf of *(name of organization)* _____ on *(date)* _____ ; or

☒ I returned the summons unexecuted because: 1482 Bronco Rd. doesn't exist, Street numbers only go up to1458 Bronco Rd. Unable to serve on February 9, 2022, 8:46 am. ; or

☐ Other: 1482 Bronco Rd. doesn't exist, street numbers only go up to1458 Bronco Rd. ; or

My fees are $ 0.00 for travel and $ 0.00 for services, for a total of $ 0.00.

I declare under penalty of perjury that this information is true.

Date: February 9, 2022

_Audomaro Maldonado_
*Server's signature*

Audomaro Maldonado #R-2019-01571
*Printed name and title*

P.O. BOX 11293, RENO, NV 89510
*Server's address*

Additional information regarding attempted service, etc.:
1) Unsuccessful Attempt: Feb 9, 2022, 8:46 am PST at HOME: 1482 BRONCO RD, BOULDER CITY, NV 89005-3104
1482 Bronco Rd. doesn't exist, street numbers only go up to1458 Bronco Rd.

STATES DISTRICT COURT; EASTERN DISTRICT OF NEW YORK,

Plaintiff / Petitioner:
ALAN GLORDANI

**AFFIDAVIT OF SERVICE**

Index No:
22-CV-642 (AMD)(LB)

Defendant / Respondent:
U.S. DEPARTMENT OF JUSTICE ET AL.

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and located at 590 Madison Ave 21st floor, New York, NY 10022 . That on Mon, Feb 07 2022 AT 04:07 PM AT 6287 WOODHAVEN BLVD, QUEENS, NY 11374 deponent served the within SUMMONS IN A CIVIL ACTION; COMPLAINT FOR VIOLATION OF CIVIL RIGHTS; ORDER TO SHOW CAUSE AND COMPLAINT; EXHIBIT 1; EXHIBIT 2; EXHIBIT 3; EXHIBIT 4 on LAW OFFICE OF JOHN T. LANDERS

| | |
|---|---|
| ☐ | **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein. |
| ☐ | **Corporation:** By serving the above on _____ a domestic corporation, by delivering a true copy thereof to _____ who is the _____ , a person authorized to accept service. |
| ☒ | **Business:** By serving the above on LAW OFFICE OF JOHN T. LANDERS by delivering a true copy thereof to VERONICA "DOE" (refused last name), , a person authorized to accept service. |
| ☐ | **Suitable Person:** By delivering a true copy thereof to _____ a person of suitable age and discretion, at the actual place of business, dwelling house, or usual place of abode in the state, and mailing, as indicated below. |
| ☐ | **Conspicuous Service:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at |
| ☐ | **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper properly addressed to said defendant at defendant's last known address, _____ , and depositing said wrapper in a post office, official depository under the exclusive care and custody of the United States Post Office, department, with New York State. Mailed on _____ . |
| ☐ | **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of NY, in any capacity whatever and received a negative reply. The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I have that the defendant is not in the military service of NY, or of the United States as that term is defined in either the State or in the Federal statutes. |

Additional Comments:
1) Successful Attempt: Feb 7, 2022, 4:07 pm EST at 6287 WOODHAVEN BLVD, QUEENS, NY 11374 received by VERONICA "DOE" (refused last name).
Served upon party authorized to accept.

Description:
Age:  37          Skin Color:  Caucasian                    Gender:  Female                    Weight:  130
Height:  5'7"                              Hair:  Blond                                        Relationship:
Other  Stated she is authorized to accept.

Sworn to before me on   2·9·22

LISANDRO LUNA                            Notary Public
2011018

BRIAN B. RICHS
Notary Public, State of New York
Reg. No. 01RI6383781
Qualified in New York County
Commission Expires Nov. 26, 2022

..ΓES DISTRICT COURT; EASTERN DISTRICT OF NEW YORK

Plaintiff / Petitioner:

ALAN GIORDANI

Defendant / Respondent:

U.S. DEPARTMENT OF JUSTICE ET AL.

**AFFIDAVIT OF SERVICE**

Index No:

22-CV-642 (AMD)(LB)

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and located at 590 Madison Ave 21st Floor, New York, NY 10022.  That on Mon, Feb 07, 2022, AT 02:38 PM AT 600 THIRD AVENUE, NEW YORK, NY 10016 deponent served the within SUMMONS IN A CIVIL ACTION; COMPLAINT FOR VIOLATION OF CIVIL RIGHTS; ORDER TO SHOW CAUSE AND COMPLAINT; EXHIBIT 1; EXHIBIT 2; EXHIBIT 3; EXHIBIT 4 on GREENFIELD STEIN & SENIO LLP, COUNSEL FOR PAUL GIORDANI, ATTN: ANGELO GRASSO

| | |
|---|---|
| ☐ | **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein. |
| ☐ | **Corporation:**   By serving the above on _____ a domestic corporation, by delivering a true copy thereof to _____ who is the _____ , a person authorized to accept service. |
| ☒ | **Business:**   By serving the above on GREENFIELD STEIN & SENIO LLP, COUNSEL FOR PAUL GIODANI, ATTN: ANGELO GRASSO by delivering a true copy thereof to KIMBERLY "DOE", , a person authorized to accept service. |
| ☐ | **Suitable Person:** By delivering a true copy thereof to _____ a person of suitable age and discretion, at the actual place of business, dwelling house, or usual place of abode in the state, and mailing, as indicated below. |
| ☐ | **Conspicuous Service:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at |
| ☐ | **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper properly addressed to said defendant at defendant's last known address, _____ , and depositing said wrapper in a post office, official depository under the exclusive care and custody of the United States Post Office, department, with New York State. Mailed on _____ . |
| ☐ | **Military Service:** I asked the person spoken to whether the defendant was in active military service of the United States or of NY, in any capacity whatever, and received a negative reply. The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief, I have that the defendant is not in the military service of NY, or of the United States as that term is defined in either the State or in the Federal statutes. |

**Additional Comments:**
1) Successful Attempt: Feb 7, 2022, 2:38 pm EST at 600 THIRD AVENUE, NEW YORK, NY 10016 received by KIMBERLY "DOE". (refused last name) stated she is authorized to accept.
**Description:**
Age:  40          Skin Color:  African American                    Gender:  Female                 Weight:  135
Height:  5'5"                                    Hair:  Black                                   Relationship:
Other

Sworn to before me on  2/17/22

_____ 2/17/22

Michael Gorman
1381333

Notary Public

BRIAN B. RICKS
Notary Public, State of New York
Reg. No. 01RI6363781
Qualified in New York County
Commission Expires Nov. 26, 2022

## <u>AFFIDAVIT OF SERVICE</u>

### UNITED STATES DISTRICT COURT
Eastern District of New York

Index Number: 22-CV-642 (AMD)                                     Date Filed: _____ Amended: 2/4/2022
(LB)

Plaintiff:
**Alan Giordani**

vs.

Defendant:
**U.S. Department of Justice, et al.**

**State of New York, County of Albany)ss.:**

Received by Undisputed Legal Inc. to be served on **Horwin Realty LLC s/h/a Horwin Realty Inc.**.

I, Patricia Burke, being duly sworn, depose and say that on the **8th day of February, 2022** at **3:15 pm**, I:

served the within named Limited Liability Company, **Horwin Realty LLC s/h/a Horwin Realty Inc.** by delivering two true copies of the **Summons in a Civil Action, Complaint for Violation of Civil Rights, Order to Show Cause and Complaint with Exhibits 1-4 pursuant to Section 306 BCL together with statutory service fee in the amount of $40.00** to **Sue Zouky** as **Business Document Specialist 2** of New York State Department of State, 99 Washington Avenue, 6th Floor, Albany, NY. The New York State Department of state being the Registered Agent/Statutory Agent of record of the within named limited liability company, in compliance with state statutes.

**Description** of Person Served: Age: 66, Sex: F, Race/Skin Color: White, Height: 5'4", Weight: 150, Hair: Gray, Glasses: N

I certify that I am over the age of 18, have no interest in the above action.

Subscribed and Sworn to before me on the 15th day of February, 2022 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

JOANNE SPORTMAN
Notary Public, State of New York
Qualified in Albany County
No. 01SP4527104
Commission Expires 1/31/2023

_____
**Patricia Burke**
Process Server

**Undisputed Legal Inc.**
**590 Madison Avenue**
**21st Floor**
**New York, NY 10022**

Our Job Serial Number: SRN-2022000748
Ref: 6655205

## AFFIDAVIT OF WITNESSES

STATE OF NEW YORK, COUNTY OF QUEENS, ss.

Each of the undersigned, Erin Kormann residing at 151-35 84th Street, Howard Beach, New York 11414, and Thomas P. L. Mahoney residing at 1 Utica Walk, Breezy Point, New York 11697, respectively, being individually and severally duly sworn, did depose and say that: The foregoing last will and testament was subscribed in our presence and sight by Nancy Giordani, the Testatrix named therein. The undersigned witnessed the execution of said will of Nancy Giordani on the 31st day of July, 2002, at 62-87 Woodhaven Blvd., Rego Park, New York 11374. At the time the instrument was so subscribed, the Testatrix declared said instrument to be her last will and testament. The undersigned thereupon signed their names as witnesses at the end of said will at the request of the Testatrix, in the presence of the Testatrix and each other. At the time of so executing said will, in our respective opinions, the Testatrix was at least eighteen years of age, and was of sound mind, memory and understanding, under no constraint, duress, fraud or undue influence, and in no respect incompetent to make a valid will. In our respective opinions, the Testatrix was able to read, write and converse in the English language, and was not suffering from any defect of sight, hearing or speech, or from any other physical or mental impairment which would affect her capacity to make a valid will. Each of us was acquainted with the Testatrix, and we make this affidavit at her request. Said will was shown to us at the time this affidavit was made, and we examined it as to the signature of the Testatrix and our signatures. Said will was executed as a single, original instrument, and not in counterparts. Said will was executed by the Testatrix and witnessed by us under the supervision of John T. Landers, an attorney-at-law admitted to practice in the State of New York, who stated that the formal requirements of the New York Estates, Powers and Trusts Law regarding the ceremony of execution and attestation of a will had been duly fulfilled and satisfied.

_Erin Kormann_
Erin Kormann

_Thomas P. L. Mahoney_
Thomas P. L. Mahoney

Severally subscribed and sworn to before me this 31st day of July, 2002.

_____
Notary Public
My commission expires on

JOHN T. LANDERS
Notary Public, State Of New York
No. 03LA2243078
Qualified in Queens County
Commission Expires Jan. 31, 2003

6

JOHN T. LANDERS
ATTORNEY AT LAW
92-117 Woodhaven Boulevard
Rego Park, N.Y. 11374
(718) 805-1400

NANCY GIORDANI



Received From Alan Landers, Esq.,
this 4th day of August, 2017,
the original of signed and
witnessed Last Will and Testament
OF Nancy Giordani dated
July 31, 2000

Alan Giordani

**ANNE LANDERS**
Attorney at Law
62-87 Woodhaven Boulevard
Rego Park, New York 11374
718-424-0087

April 5, 2018

Mr. Alan Giordani
82-14 60 Road
Middle Village, New York 11379

Re: Estate of Nancy Giordani

Dear Mr. Giordani:

On August 4, 2017, I delivered to you the original Last Will and Testament of your mother, Nancy Giordani, dated July 31, 2002. You represented to me that you were going to probate said Last Will and Testament in the Surrogate's Court, Queens County.

The Last Will and Testament names you and your brother, Paul Giordani, as Co-Executors. I have attended the Surrogate's Court and I have verified that you have not filed a Probate Petition.

Upon behalf of your family, demand is hereby made for the return to me of said original Last Will and Testament so that I may commence the probate process.

Please contact me upon receipt of this letter. If I do not hear from you by Friday, April 13th, I shall have no choice but to bring your lack of action to the court, including, if necessary, the New York State Grievance Committee.

I urge your immediate cooperation.

Very truly yours,

Anne Landers

AL:ae
Via Priority Mail

*Greenfield Stein & Senior, LLP*
*Attorneys at Law*
*600 Third Avenue, New York, N.Y. 10016*

*www.gss-law.com*

ANNE C. BEDERKA
HARVEY E. CORN
GARY B. FREIDMAN
ANGELO M. GRASSO
ALAN E. KATZ
CHARLES T. SCOTT
NORMAN A. SENIOR
PAUL T. SHOEMAKER
KENNETH L. STEIN

COUNSEL
ALAN C. ROTHFELD

TEL: (212) 818-9600
FAX: (212) 818-1264

DIRECT DIAL: (212) 818-9240
E-MAIL: AGRASSO@GSS-LAW.COM

September 28, 2018

**VIA FEDERAL EXPRESS**

Alan Giordani, Esq.
82-14 60th Road
Middle Village, NY 11379-5327

Re:  Estate of Nancy Giordani
     Our File No. 10438-1

Dear Mr. Giordani:

We represent your brother, Paul Giordani, in connection with the Estate of your mother, Nancy Giordani.

We have been advised by Anne Landers, Esq., that your mother's original 2002 Last Will and Testament was hand-delivered to you shortly after your mother's death. Even though over a year has passed, the will has not been offered for probate.

Kindly advise when you will be offering the will for probate. If we have not received confirmation that the will has been filed in the Surrogate's Court with a probate petition by October 9, we will commence a proceeding to compel its production pursuant to SCPA §1401, and seek to have all costs and attorney's fees imposed against you.

Very truly yours,

Angelo M. Grasso

cc:  Mr. Paul Giordani

ANTHONY D. WEINER
NEW YORK

☐ 501 CANNON BUILDING
WASHINGTON, DC 20515
(202) 225-6616

DISTRICT OFFICES:
☐ 1901 EMMONS AVE., SUITE 212
BROOKLYN, NY 11235
(718) 332-9001

☐ 118-21 QUEENS BLVD., RM. 206
FOREST HILLS, NY 11375

☐ 90-16 ROCKAWAY BEACH BLVD.
ROCKAWAY BEACH, NY 11693

𝕮𝖔𝖓𝖌𝖗𝖊𝖘𝖘 𝖔𝖋 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝖘𝖙𝖆𝖙𝖊𝖘
𝕳𝖔𝖚𝖘𝖊 𝖔𝖋 𝕽𝖊𝖕𝖗𝖊𝖘𝖊𝖓𝖙𝖆𝖙𝖎𝖛𝖊𝖘
𝖂𝖆𝖘𝖍𝖎𝖓𝖌𝖙𝖔𝖓, 𝕯𝕮 20515

COMMITTEE:

JUDICIARY

FRESHMAN WHIP

May 4, 1999

James Leonard
Commissioner
Department of Buildings
126-06 Queens Boulevard
Forest Hills, NY 11415

Dear Commissioner Leonard:

I have been contacted by my constituents with regard to extension work at a pub located at 82-11 Eliot Avenue, between 82nd Street and 83rd Street, in Queens, in my district, that allegedly has been found to be in violation of building codes.

According to my constituents, the owner of this property has already been issued violations by the Department of Buildings, but the extension has yet to be dismantled.

Please investigate this matter thoroughly and inform me of your findings so that I may notify my constituents.

Thank you in advance for your prompt attention and reply to this important matter.

Sincerely,

ANTHONY D. WEINER
Member of Congress

ADW:jh

cc: Allan Giordani



**DEATH SALOON:** Owner Pat Kelly, in white hat, talks with police outside his Middle Village cop and fire bar, where an employee — a father of two — was shot to death yesterday.

# Immigrant killed in Qns. bar

By LORENA MONGELLI,
ALEX GINSBERG
and LEASANI GITTENS

A hard-working immigrant — only six months away from returning to his wife and children in Ecuador — was murdered yesterday at the Queens bar where he worked.

Louis Cajas, 35, was found between the stove and a counter in the kitchen at the back of Kelly's Bar in Middle Village, lying in a pool of blood with a gunshot wound in his chest, cops said.

A knife was found by Cajas' body, which initially led police to believe he was stabbed.

Police yesterday were still searching for a suspect and motive for the crime, which took place at a bar locals in the quiet neighborhood described as a cop and fireman hangout.



**LOUIS CAJAS**
Saving for Ecuador return.

Cajas started his day washing dishes and cleaning up at about 9 a.m. Police sources said he was last seen alive at about 9:30 by bar owner Pat Kelly and his son. They left the bar, and Kelly's wife was working in the basement when Cajas was killed upstairs.

She apparently heard nothing, the sources said. Kelly and his son returned at about 10:20 a.m. and made the gruesome discovery.

Distraught over the death of Cajas, who had worked 15-hour days, seven days a week as a dishwasher and cleaner, Kelly said, "This kid was a sweetheart."

Relatives said Cajas had been in the city for 10 years and was working to save enough money to return to his wife and two teenage daughters in Ecuador.

"I don't know how we can tell her," said Manuel Alao, 34, of his sister, Zoila, Cajas' wife.

Alao, who rooms with Cajas in an apartment on Trinity Avenue in the Melrose section of The Bronx, said his brother-in-law was only six months away from reuniting with his family in a newly built house.

"He was ready to go

[back]," said Alao, who couldn't believe that anybody would want hurt Cajas. "He had no enemies, he was a really good person.

"I don't know why anyone would do something like [that]. I don't know why anyone would take an honest man's life. How can somebody be so evil?

"I want to remember him with love," Alao went on. "He liked to play sports, he liked to play soccer, and when he had the chance he liked to go fishing out on Long Island."

Cajas' sister-in-law, Luisa Alao, said the family is setting up a fund to send his body back to Ecuador. Donations can be sent to the family at 39-63 65th St., Woodside, N.Y. 11377. For more information, call (718) 446-4137.

*Additional reporting by Erika Martinez*

8 POLICE INDICTED IN ADDICT ARRESTS
By DAVID BURNHAM
New York Times (1857-Current file); Sep 7, 1972; ProQuest Historical Newspapers The New York Times
pg. 1

# 8 POLICE INDICTED IN ADDICT ARRESTS

## Accused of Stealing $10,000 From Suspects in Bronx During Last 2½ Years

### By DAVID BURNHAM

Three detectives and five patrolmen have been indicted for stealing money from addicts while making narcotics arrests in the last two and a half years, District Attorney Burton B. Roberts of the Bronx announced yesterday.

The investigation leading to the indictment of the eight men on a variety of robbery, grand larceny, conspiracy and official misconduct charges was unusual because it was sparked by information from a police undercover agent and completed with the assistance of a second policeman who agreed to cooperate after he reportedly had been caught stealing.

The men were accused of having stolen $10,000. Mr. Roberts said at a news conference that the investigation was continuing and that more indictments were expected.

The importance of the case and the unusual techniques used to investigate it—in the eyes of the Police Department —were indicated by the presence at the conference of Commissioner Patrick V. Murphy,

Continued on Page 50, Column 1

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

# 8 Policemen Indicted for Stealing Addicts' Money

Continued From Page 1, Col. 1

First Deputy Commissioner William H. T. Smith, Deputy Commissioner William P. Mc-Carthy, who is in charge of organized-crime control, and other police officials.

In another unusual development in the case, Mr. Roberts asked Supreme Court Justice Joseph P. Sullivan to release from jail two addicts who the prosecutor said had pleaded guilty to possession of heroin and cocaine and been sentenced to jail on the basis of untrue sworn statements by two of the eight indicted policemen.

Mr. Roberts said his office had decided to make similar requests for the defendants in four other cases because of apparent police perjury and still was investigating 15 additional cases.

The two prisoners were released yesterday, pending a final decision Sept. 14. Each has already served seven and a half months in jail.

Mr. Roberts said that the investigation by his office and the Police Department, which resulted in the charges against the eight policemen, proved that intimate cooperation existed between the two branches of law enforcement and their sincere desire "to rid the department of corruption."

"We must eliminate the scourge of police corruption if we are to eliminate the scourge of crime that infects this city," he declared.

Commissioner Murphy, sitting at the prosecutor's side in his office in the State Supreme Court Building at 851 Grand Concourse in the Bronx, said he found it "troubling" that corruption appeared to continue despite the many efforts to prevent it.

The Commissioner announced he was conducting his own investigation to determine whether the commanders involved had "lived up to their responsibilities."

If the investigation found commanders who had failed to properly supervise their men, he said, they could be removed from their commands, demoted or face Police Department charges.

Questioned about the impact of the indictments on police morale, Mr. Murphy said "morale is strengthened as our integrity is strengthened."

The investigation disclosed yesterday is the second major inquiry on police corruption to emerge here in the last few months in which policemen implicated in criminal acts have been persuaded to collect evidence against their colleagues.

This investigative technique, pioneered here by the Knapp Commission, resulted in criminal or department charges being brought five months ago against 37 policemen assigned to enforce gambling laws in Brooklyn.

The Bronx indictments were different in that the initial investigation, which began in February, was triggered by leads provided by a policeman specifically assigned to narcotics enforcement in the Bronx



District Attorney Burton B. Roberts speaking at the conference on indictment of policemen and detectives. With him in his Bronx office are Police Commissioner Patrick V. Murphy, left, and Deputy Commissioner William P. McCarthy, center rear.

to spot indications of corruption.

According to Mr. Roberts, the information of Edward Williams, an undercover policeman, led to the indictment of three other policemen on charges of robbery and grand larceny for allegedly stealing $250 in cash while making a narcotics arrest on Feb. 11.

From the initial lead provided by the undercover policeman and the additional assistance of the "turned" detective, who Mr. Roberts identified as Vincent O'Keefe, the investigators identified 14 instances where money—anywhere from $47 to $4,000—was stolen from addicts.

Not all of the eight policemen were involved in each alleged theft but two groups of them were indicted for conspiring to steal and share the funds taken from those they were arresting.

The eight policemen pleaded not guilty at their arraignment

yesterday before Justice Sullivan and were paroled without bail pending a hearing Wednesday.

The detectives indicted are John Reilly, 28 years old; James Connolly, 36, and Theodore Crews, 38. The patrolmen indicted are Robert Petro, 34; Patrick Kelly, 28; Joseph De-Rosa, 27; Barney Cohen, 37, and Lewis Orologio, 41.

All have now been suspended from the department pending final disposition of their cases.

## AFFIDAVIT OF SERVICE

| Case:<br>22-CV-642<br>(AMD)(LB) | Court:<br>UNITED STATES DISTRICT COURT; EASTERN<br>DISTRICT OF NEW YORK | County: | Job:<br>6655165 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>ALAN GIORDANI | | Defendant / Respondent:<br>U.S. DEPARTMENT OF JUSTICE ET AL. | |
| Received by:<br>Undisputed Legal | | For:<br>ALAN GIORDANI | |
| To be served upon:<br>CITY OF NEW YORK | | | |

I, Michael Gorman, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:  INEZ CONTRERAS, 100 CHURCH STREET, NEW YORK, NY 10007

Manner of Service:  Authorized, Feb 8, 2022, 9:27 am EST

Documents:  SUMMONS IN A CIVIL ACTION; COMPLAINT FOR VIOLATION OF CIVIL RIGHTS; ORDER TO SHOW CAUSE AND COMPLAINT; EXHIBIT 1; EXHIBIT 2; EXHIBIT 3; EXHIBIT 4

Additional Comments:
1) Unsuccessful Attempt: Feb 7, 2022, 3:14 pm EST at 100 CHURCH STREET, NEW YORK, NY 10007
CLERK'S OFFICE OPEN ONLY TUES AND THURS TO ACCEPT DOCS.

2) Successful Attempt: Feb 8, 2022, 9:27 am EST at 100 CHURCH STREET, NEW YORK, NY 10007 received by INEZ CONTRERAS.
Age: 30; Skin Color: Latino; Gender: Female; Weight: 175; Height: 5'7"; Hair: Brown;

Subscribed and sworn to before me by the offiant who is personally known to me.

Michael Gorman          Date  2/17/22
1381333

Notary Public

Date  2/17/22          Commission Expires

Undisputed Legal
590 Madison Ave 21st floor
New York, NY 10022

BRIAN B. RICKS
Notary Public, State of New York
Reg. No. 01RI6363731
Qualified in New York County
Commission Expires Nov. 26, 2022

UNDISPUTED LEGAL, INC., 590 MADISON AVENUE, 21ST FLOOR, NEW YORK, NEW YORK, 10022

## AFFIDAVIT OF SERVICE

| | | County: | Job:<br>6655158 |
|---|---|---|---|
| ...se:<br>22-CV-642<br>(AMD)(LB) | Court:<br>UNITED STATES DISTRICT COURT; EASTERN<br>DISTRICT OF NEW YORK | | |
| Plaintiff / Petitioner:<br>ALAN GIORDANI | | Defendant / Respondent:<br>U.S. DEPARTMENT OF JUSTICE ET AL. | |
| Received by:<br>Undisputed Legal | | For:<br>ALAN GIORDANI | |
| To be served upon:<br>NYS ATTORNEY GENERAL | | | |

I, Michael Gorman, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:   JASMINE "DOE", 28 LIBERTY STREET, NEW YORK, NY 10005

Manner of Service:   Authorized, Feb 7, 2022, 3:33 pm EST

Documents:   SUMMONS IN A CIVIL ACTION; COMPLAINT FOR VIOLATION OF CIVIL RIGHTS; ORDER TO SHOW CAUSE AND COMPLAINT; EXHIBIT 1; EXHIBIT 2; EXHIBIT 3; EXHIBIT 4

Additional Comments:
1) Successful Attempt: Feb 7, 2022, 3:33 pm EST at 28 LIBERTY STREET, NEW YORK, NY 10005 received by JASMINE "DOE".
Age: 40; Skin Color: African American; Gender: Female; Weight: 200; Height: 5'7"; Hair: Black;

Subscribed and sworn to before me by the affiant who is
personally known to me.

_____   2/17/22
Michael Gorman              Date
1381333

_____
Notary Public

2/17/22
Date                    Commission Expires

Undisputed Legal
590 Madison Ave 21st floor
New York, NY 10022

BRIAN B. RICKS
Notary Public, State of New York
Reg. No. 01RI6363781
Qualified in New York County
Commission Expires Nov. 26, 2022

# AFFIDAVIT OF SERVICE BY MAIL

CASE NO: **22-CV-642 (AMD)(LB)**

UNITED STATES DISTRICT COURT; EASTERN DISTRICT OF NEW YORK
Plaintiff / Petitioner: ALAN GIORDANI
vs.
Defendant / Respondent: U.S. DEPARTMENT OF JUSTICE ET AL.

I Nasim Dehghani being duly sworn deposes and says: that deponent is not a party to this action, is over 18 years of age.

That on Thu, Feb 10, 2022 deponent served the within:
SUMMONS IN A CIVIL ACTION; COMPLAINT FOR VIOLATION OF CIVIL RIGHTS; ORDER TO SHOW CAUSE AND COMPLAINT; EXHIBIT 1; EXHIBIT 2; EXHIBIT 3; EXHIBIT 4 on NYS ATTORNEY GENERAL at the address The Capital , Albany , NY 12224 by enclosing a copy of same in a postpaid wrapper properly addressed to the above recipient and deposited said wrapper in (a post office) official depository under exclusive care and custody of the United States Postal Services, Mailed on 02/10/2022 via:

First Class Mail Envelope marked "**Personal and Confidential**".

*(check all that apply)*

☐ FIRST CLASS MAILING First Class Mail Envelope marked "Personal and Confidential"
☒ CERTIFIED MAILING certified mail marked "Personal and Confidential" Receipt Number (7019 2970 0000 6757 6204)
☐ RETURN RECEIPT REQUESTED marked "Personal and Confidential" Receipt Number (_____)
☒ REGISTERED MAILING marked "Personal and Confidential"

Sworn to me on the  2/17/22

_____
Notary Public

BROWN B. RICKS
Notary Public, State of New York
Reg. No. 01RI6383781
Qualified in New York County
Commission Expires Nov. 26, 2022

_____  2/17/22
Nasim Dehghani

UNDISPUTED LEGAL, INC., 590 MADISON AVENUE, 21ST FLOOR, NEW YORK, NEW YORK, 10022

# AFFIDAVIT OF SERVICE BY MAIL

UNITED STATES DISTRICT COURT; EASTERN DISTRICT OF NEW YORK       CASE NO: **22-CV-642 (AMD)(LB)**
Plaintiff / Petitioner: **ALAN GIORDANI**
vs.
Defendant / Respondent: **U.S. DEPARTMENT OF JUSTICE ET AL.**

I Nasim Dehghani being duly sworn deposes and says: that deponent is not a party to this action, is over 18 years of age.

That on Thu, Feb 10, 2022 deponent served the within:
SUMMONS IN A CIVIL ACTION; COMPLAINT FOR VIOLATION OF CIVIL RIGHTS; ORDER TO SHOW CAUSE AND COMPLAINT;
EXHIBIT 1; EXHIBIT 2; EXHIBIT 3; EXHIBIT 4 on **U.S. DEPARTMENT OF JUSTICE** at the address **950 Pennsylvania Ave NW,
Washington, DC 20530** by enclosing a copy of same in a postpaid wrapper properly addressed to the above recipient and
deposited said wrapper in (a post office) official depository under exclusive care and custody of the United States Postal Services,
Mailed on 02/10/2022 via:

First Class Mail Envelope marked **"Personal and Confidential"**.

*(check all that apply)*

☐ FIRST CLASS MAILING First Class Mail Envelope marked "Personal and Confidential"
☒ CERTIFIED MAILING certified mail marked "Personal and Confidential" Receipt Number (7019 2970 0000 6757 6211)
☐ RETURN RECEIPT REQUESTED marked "Personal and Confidential" Receipt Number (_____)
☐ REGISTERED marked "Personal and Confidential" Receipt Number

Sworn to me on the __2/17/22__

BRIAN I. RICKS
Notary Public, State of New York
Reg. No. 01RI6383781
Qualified in New York County
Commission Expires Nov. 26, 2022

*Notary Public*

Nasim Dehghani      2/17/22

UNDISPUTED LEGAL, INC., 590 MADISON AVENUE, 21ST FLOOR, NEW YORK, NEW YORK, 10022